PER CURIAM.
Peter M. Lopez petitions for reinstatement to The Florida Bar (Bar) pursuant to rule 3-7.9, Rules Regulating The Florida Bar, following service of a three-year suspension imposed by this Court upon his conviction on twenty-two felony counts. The Fla. Bar v. Lopez, No. 63,714 (Fla. Sept. 9, 1983). We have jurisdiction. Art. V, § 15, Fla. Const. The referee recommends that Lopez be reinstated. The Bar petitions for review, arguing that petitioner has not shown that he has acted with unimpeachable conduct, as found by the referee, and should not be reinstated. We agree and, for the reasons which follow, dismiss the petition for reinstatement.
Petitioner was first suspended in 1981 for tampering with witnesses by promising that he would dismiss a suit against them if they would change their testimony. Noting that this was a criminal act subject to a one-year term of imprisonment, we disapproved the referee’s recommendation of a three-month suspension and imposed a one-year suspension. Reinstatement was contingent upon proof of rehabilitation and passing the ethics portion of the Bar examination. The Fla. Bar v. Lopez, 406 So.2d 1100 (Fla.1981). In 1983, petitioner was convicted on a twenty-two count felony indictment in federal district court. Each count involved petitioner’s representation of aliens during which he willfully and knowingly made or caused to be made false, fictitious statements as to material facts in applications to the United States Immigration and Naturalization Service (INS). Following these convictions, petitioner was automatically suspended for a three-year period pursuant to the former Florida Bar Integration Rule, article XI, Rule 11.07. Reinstatement was contingent on restoration of civil rights and proof of fitness to resume the practice of law. In addition, based on the continuing suspension from 1981, petitioner was required to successfully pass the ethics portion of the Bar examination. Petitioner successfully passed the ethics examination in 1986 and his civil rights were restored in 1988.
The issue is whether petitioner has demonstrated his fitness to resume the practice of law. In support, petitioner presented testimony from himself, relatives, friends, and professional associates to the effect that he was morally, ethically, and professionally fit to resume practice. In opposition, the Bar introduced, or attempted to introduce, evidence showing unfitness.
The first question concerns testimony, which the Bar attempted to introduce, *836 from the assistant United States attorney who prosecuted petitioner on the twenty-two felony counts and an investigator for INS who was familiar with petitioner’s legal contacts with INS. The referee initially concluded that this evidence was not relevant because it concerned events occurring before the felony convictions which led to petitioner’s second suspension. The thrust of the referee’s ruling appears to have been that the Bar did not attempt to disbar petitioner in 1983, when it could have tried to do so, and was now estopped from producing evidence on which a disbarment might have been based.* This testimony concerning petitioner’s criminal misconduct was extremely damning. It did not, of course, rule out the possibility of rehabilitation but it strongly suggested that claims of rehabilitation should be closely examined. After receiving a proffer of the testimony, the referee ruled that it would be accepted for the limited purpose of putting some “humanity” into the felonies. It is by no means clear what weight, if any, was given to this testimony. It is clear, however, that the referee erred in ruling that evidence concerning presus-pension conduct was irrelevant. It is proper for the referee to consider a petitioner’s past disciplinary record, including the nature of the offense(s) which led to his suspension or disbarment. The Fla. Bar re: Rubin, 323 So.2d 257 (Fla.1975); Petition of Wolf, 257 So.2d 547 (Fla.1972).
Petitioner’s petition for reinstatement included copies of his recent personal income tax returns. In the process of examining these, the Bar’s investigator discovered that petitioner and his wife were the sole officers and shareholders in a Florida corporation involved in real estate for which petitioner had not filed Florida or federal tax returns for the years 1983-87. When this was brought out at the hearing, the referee granted a continuance for petitioner to file the returns. Approximately two weeks later petitioner introduced copies of the federal tax returns. In colloquies with the parties, the referee concluded that this satisfactorily resolved the issue in petitioner’s favor because the Internal Revenue Service (IRS) was not complaining, petitioner owed no money for the five-year period, and petitioner had satisfactorily explained his failure to file. We disagree. First, petitioner failed to include information concerning his failure to file the corporate returns in his petition for reinstatement. This withholding of relevant information bears a remarkable resemblance to petitioner’s first contact with the Bar, and this Court, twenty years ago, when he withheld information from his application for admission to the Bar. Lopez v. Florida Bd. of Bar Examiners, 231 So.2d 819, 821 (Fla.1969). In excusing the conduct and approving petitioner’s admission to the Bar, we commented:
It is true that much of the evidence creates some suspicion about his ethical responsibility, but it must be remembered that as he enters the practice of law he will be bound by, and required to adhere strictly to, the canons of ethics relating to the legal profession, and should he falter, The Florida Bar, under the rules of this court, possesses adequate machinery to bring him to accountability.
Id. Petitioner’s conduct in the last decade shows that he has indeed faltered and sorely tested the adequacy of the Bar’s machinery. In a similar vein, petitioner’s submission for reinstatement reported that other than the arrest which led to the federal felony conviction, he had not been arrested or prosecuted for any crime except for failure to have a valid automobile inspection sticker in 1981. The Bar’s investigation revealed that petitioner had been arrested for extortion in 1980 based on an affidavit that petitioner had hired a gunman to threaten an accountant for lodging a complaint against petitioner with The Florida Bar. Although both the sticker and extortion arrests occurred prior to respondent’s suspensions, he explained that the extortion arrest was not reported because it occurred prior to his suspension and he did not believe it was relevant. The referee accurately characterized this expla *837 nation as “absurd.” Second, it is irrelevant whether IRS is or is not complaining and whether petitioner owes taxes on the five years in question. Petitioner’s legal and ethical responsibility was to file returns. His failure to do so is highly relevant to the issue of whether petitioner has met his burden of demonstrating his fitness to resume the practice of law. Third, petitioner’s explanation for his failure to file the return was that his accountant had lost documents necessary for the preparation of the returns and he, petitioner, had no money to pay taxes. This explanation, attempting to transfer responsibility elsewhere, consistent with explanations elsewhere, is absurd. After the failure to file was discovered and the referee granted a continuance to await their filing, the returns were purportedly filed within fifteen days reporting negative taxable income for all years in question.
Petitioner’s bank statements for the two-year period of January 1986-88 show that petitioner issued 444 checks on his account at Ocean Bank. Of these, 199 created overdrafts on the account, of which 48 were returned for nonsufficient funds. Petitioner testified that the returned checks were immediately made good, that he had an overdraft agreement with the bank, and the bank erred in returning the 48 checks. In support, the president of the bank testified he had an oral overdraft agreement with petitioner whereby petitioner would call when he wished to make an overdraft and, normally that he, the president, would approve the overdraft. Neither the president nor petitioner offered any explanation for the high number, 48, of “errors.” Petitioner’s basic position, which the referee apparently accepted, is that the overdraft agreement and petitioner’s testimony that he immediately made the checks good is an adequate explanation and that the returned checks were the responsibility of the bank. We disagree. The burden of showing fitness to resume the practice of law was on petitioner. Routinely writing bad checks, even if eventually made good, burdens the recipients and is fundamentally dishonest. It brings disrepute on the writer and the profession. It is inconsistent with fitness to practice law.
Even if this were a disciplinary proceeding against petitioner, without reference to his previous suspensions, it is clear that he would be subject to suspension or other discipline. In the context of a petition for reinstatement, petitioner has completely failed to demonstrate his fitness to resume the practice of law. The facts of the case are essentially undisputed. However, the referee’s recommendation for reinstatement lacks support in the record and is disapproved. We dismiss the petition for reinstatement in accordance with rule 3-7.-9(k).
The costs of these proceedings are taxed against respondent. Judgment for costs in the amount of $3,564.00 is hereby entered against Peter M. Lopez, for which sum let execution issue.
In view of the evidence developed during this proceeding, no successive petition for reinstatement will be entertained for a period of two years from the date of this order.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT and GRIMES, JJ., concur.
McDonald and KOGAN, JJ., did not participate in this case.

 Bar counsel advised the referee that Bar policy in 1983 was not to initiate disbarment proceedings under such circumstances, but that this policy had been changed.