PER CURIAM.
We have before us Gail Anne Roberts’ petition for reinstatement to the practice of law. The referee recommended that the petition be granted. The Florida Bar has appealed that recommendation, asking that we deny the petition. We have juris-diction. Art. V, § 15, Fla. Const. For the reasons expressed, we find that the petition should be denied.
The following facts were found by the referee in this case. Gail Anne Roberts was conditionally admitted to the Florida Bar in 1986 based on her admission of prior drug-use and a 1981 arrest in Iowa for possession of a controlled substance, which was subsequently dismissed,[1] She was placed on a three-year probationary period, during which she was required to submit to monthly urinalysis and random testing. All tests were negative, but some were filed late.
Apparently, based on Roberts’ failure to timely file all of the monthly reports, the Bar filed a contempt proceeding after the end of Roberts’ three-year probationary period asking that her conditional admission be revoked. Several months later, in March 1990, Roberts and the Bar entered into a stipulation under which the Bar withdrew its petition and Roberts’ probationary admission period was extended for another three years. The stipulation was approved by this Court.
In 1991, Roberts pleaded no contest to a charge of purchasing cocaine from a confidential informant. She was given probation and adjudication was withheld. In April 1992, Roberts was suspended from membership in the Bar based on the that plea. See Florida Bar v. Roberts, 626 So.2d 658 (Fla.1993). That suspension ended on April 6, 1995, and Roberts subsequently filed this petition for reinstatement in 1997.
The Bar moved to dismiss the petition, asserting that Roberts had failed to show rehabilitation. The Bar based its motion on the fact that she had written in excess of 180 worthless cheeks on her personal account during the previous five years. The referee denied the motion and a hearing was held on the merits.
After setting forth the above facts, the referee made the following findings: Roberts had never had a positive urinalysis; she does not and probably never had a substance abuse problem; she missed or was late in filing reports; all witnesses testified favorably as to Roberts’ character, good standing in the community, and professional ability, with the most impressive witness being her ex-boyfriend, who is also the father of Roberts’ son; she harbors no ill will towards the Bar; she has a sense of repentance and a desire and intent to conduct herself in an exemplary fashion; she has gone to great lengths to repay everyone she has been able to locate who received a worthless check *285 from her; and no basis existed for the Bar’s assertion that she may not have properly reported her income to the IRS. The referee then found that Roberts had met the burden of establishing that she was entitled to reinstatement as a member of the Bar. Relying on this Court’s opinion in Florida Bar re Whitlock, 511 So.2d 524 (Fla.1987), the referee concluded that Roberts had suffered a substantial loss of income after her suspension and that to deny reinstatement for the reasons given by the Bar would basically deny reinstatement forever. However, the referee found that Roberts’ reinstatement should be conditional in that she should be supervised by the Bar for one year to ensure that her finances are in proper order.
The Bar has appealed the referee’s recommendation, asserting that Roberts has failed to prove that she is entitled to resume the practice of law. The Bar bases its assertion in part on the fact that Roberts has written over 180 worthless checks in the past five years,[2] including the issuance of thirteen worthless checks during the month she filed for reinstatement and the issuance of eighteen more worthless checks during the time this action was pending. The Bar notes that the issuance of a worthless check constitutes unethical conduct and subjects an attorney to discipline. See Florida Bar v. Davis, 361 So.2d 159 (Fla.1978). Although this case is a reinstatement rather than a disciplinary proceeding, the Bar contends that the same rule should apply to both situations. In fact, according to the Bar, the rule should be applied with greater vigor to an attorney who has been previously suspended. The Bar also notes that no proof of restitution other than Roberts’ own testimony was provided at the hearing. Additionally, the Bar states that Roberts’ explanation regarding her cocaine charge was not believable. At the hearing, she stated that she agreed to buy cocaine from the undercover agent to get rid of him; however, the facts reflect that she agreed to meet with him after he came up to her on the street, returned to meet him, and then purchased cocaine. Finally, the Bar notes that Roberts failed to show up for testing on a number of occasions. For example, the Bar states that in the years of conditional admission, Roberts provided eight monthly reports when she should have provided twenty-four, and, although all tests were negative, there is no way to know what the tests would have reflected for the missed testing dates,. Consequently, the Bar asserts that Roberts’ reinstatement petition should be denied.
Any person moving to be reinstated as a member of The Florida Bar must establish the following six elements: (1) full compliance with conditions imposed in the previous disciplinary judgment; (2) unimpeachable character; (3) a reputation for professional ability; (4) lack of malice toward those responsible for the previous disciplinary action; (5) a repentant attitude concerning the earlier wrongdoing and a strong resolution to adhere to principles of correct conduct; and (6) restitution to persons harmed by the earlier misconduct. Florida Bar re Sickmen, 523 So.2d 154, 155 (Fla.1988); In re Dawson, 131 So.2d 472 (Fla.1961). In this case, the referee found that Roberts had met all of these criteria except that she had failed on occasion to submit to drug testing as scheduled. The referee also discussed Roberts’ inability to properly handle her personal checking account, finding that Roberts had reimbursed, to the best of her ability, everyone to whom she had written worthless checks.
We have stated that the writing of worthless checks is not necessarily a violation involving moral turpitude, corruptions, defalcations, theft, larceny, or other serious or reprehensible offense. Davis. Nevertheless, we have stated that “the issuance of a worthless check by an attorney constitutes unethical conduct and subjects the attorney to professional discipline by the Florida Bar.” Id. at 162. Additionally, routinely writing worthless checks, even where restitution is made, “burdens the recipients and is fundamentally dishonest. It brings disrepute on the writer and the profession. It is inconsistent with fitness to practice law.” Florida Bar re Lopez, 545 So.2d 835, 837 *286 (Fla.1989). As we noted in Florida Bar v. Dingle, 235 So.2d 479, 480 (Fla.1970),
A careful examination of the record reveals a general lack of concern about financial matters on the part of Respondent. He admits issuing worthless checks repeatedly. He says he is honest but a poor bookkeeper. This explanation may well be true but does not excuse Respondent’s misconduct.
[[Image here]]
Financial insecurity coupled with utter economic irresponsibility as shown here creates potential danger to the public.
Every attorney should be eligible and worthy to accept and hold trust funds. The public should feel secure in leaving money or other property with any member of the Bar.
The worthless checks written in Dingle involved both personal and trust account checks, whereas in this case, no trust account violations are at issue. However, we find that the Bar has established that Roberts is economically irresponsible given that she wrote over 150 worthless checks during a five-year period and given that she continued to write worthless checks even after she applied for reinstatement. As we noted in Dingle, such irresponsibility creates a potential danger to the public should Roberts be placed in a position of handling trust funds.
As previously noted, the referee recommended reinstatement based on our opinion in Whitlock. In that case, Whitlock had been suspended for three years and then suspended for one more year based on trust account violations and his handling of a real estate transaction. The referee recommended that Whitlock not be reinstated because, at the time he sought reinstatement, he owed a significant amount of money, a portion of which was child support. We overruled that recommendation based on Whitlock’s inability to earn money to pay these debts absent reinstatement and his unimpeachable character. Unlike Whitlock, however, Roberts continued to engage in misconduct during her suspension by writing a significant number of worthless checks. The fact that Roberts may have provided restitution on all of the checks does not excuse the offense. See Florida Bar re Lopez, 545 So.2d 835 (Fla.1989) (forty-eight checks returned for insufficient funds over two-year period, even where restitution made, burdened recipients and was fundamentally dishonest). While the character witnesses who testified on her behalf stated that she was of good character, the act of writing such a large number of worthless checks disputes that testimony. We find that the admitted facts in this record reflect that Roberts is fiscally irresponsible.
We conclude that the large number of worthless checks written by Roberts, when coupled with her past history, which includes a drug conviction during her probationary period of admission, reflects that she should not be readmitted to the practice of law at this time. As noted in the Board of Bar Examiners’ initial investigation, one of the initial concerns in conditionally admitting Roberts to the Bar was her “history of financial irresponsibility involving the issuance of worthless checks and the delinquent repayment of credit card accounts and student loans.” Additionally, as noted by Justice Grimes in his dissenting opinion in Florida Bar v. Roberts, 626 So.2d 658, 659 (Fla.1993) (Grimes, J., dissenting), Roberts was “a marginal candidate for admission in the first place” due to drug problems and a previous drug arrest. Moreover, during her conditional admission, Roberts failed to submit required urinalysis reports on a number of occasions; she was suspended for three years for her no contest plea to the purchase of cocaine; and during her suspension she wrote over 150 worthless checks, some of which were written after she petitioned for reinstatement.
Accordingly, we deny Roberts’ petition for reinstatement, but we will allow her to petition for reinstatement again two years from the date this opinion becomes final. During the interim, she must continue to submit to drug testing, must not miss any drug testing requirements, and must establish financial responsibility. Judgment is hereby entered against Gail A. Roberts in favor of The Florida Bar for the costs of this proceeding in the amount of $5,062.97.
It is so ordered.
*287 HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.

. The report and recommendation to this Court by the Board of Bar Examiners stated:
An extensive investigation of the Applicant’s activities in question was undertaken which established a prior history of financial irresponsibility involving the issuance of worthless checks and the delinquent repayment of credit card accounts and student loans, and an arrest for possession of controlled substances.

. The exact number of checks is disputed. Roberts asserts that the Bar has doubledcounted some checks. It is clear, however, that Roberts wrote more than 150 worthless checks.