PER CURIAM.
Petitioner M.A.R. asks this Court to review the recommendations of the Florida Board of Bar Examiners. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons expressed below, we approve the Board’s recommendation that M.A.R. be denied admission to The Florida Bar at this time.
Petitioner M.A.R. filed an application for admission to The Florida Bar on March 14, 1995. On December 23, 1996, the Florida Board of Bar Examiners filed formal specifications against him alleging several items of misconduct. After a formal hearing, the Board found that M.A.R. had violated a court order regarding child support and, although the record contains evidence of a far greater default, found that the amount in arrears was at least $17,000, as admitted by M.A.R. The Board found the fact that M.A.R.’s children did not suffer as a result of his non-payment did not mitigate the seriousness of the conduct, and that M.A.R.’s evidence regarding an agreement between M.A.R. and his former spouse relating to his non-payment of child support did not establish an affirmative defense to the proven allegations. The record is certainly subject to a reasonable interpretation that M.A.R. made a personal decision, and his ex-wife was simply forced to accept the consequences of that decision.
Additionally, the Board found that M.A.R. failed to timely file federal income tax returns and timely pay taxes in 1987, 1988, 1989, and 1990, and that since 1995, he has written oyer forty bad checks, the most recent being issued only one week prior to the formal hearing. The Board further found that M.A.R. gave a false oath on certain documents submitted to the Board by executing and having those *91 documents notarized prior to filling in the information. M.A.R. admitted these actions, but at the formal hearing he testified that he did not appreciate the inappropriateness of his actions at the time the documents were notarized. The Board found this testimony unpersuasive in light of his testimony at his previous investigative hearing that his actions were motivated, in part, by a desire not to reveal unfavorable information to the notaries with whom he worked.
Next, the Board found that M.A.R. lied on his application for admission to law school with regard to his prior arrest and probation for DUI. Although M.A.R. testified that his statement on the application was not intentionally false and was due to his misreading of the question on the application, the Board rejected this explanation as unworthy of belief. Finally, the Board found that M.A.R. had falsely represented himself to be an attorney in a letter to a creditor.
At the formal hearing, along with his own testimony and that of his adult children and present wife, M.A.R. presented character testimony from an attorney friend and testimony from his mother. He also presented exhibits showing his child support payments, his law school application, a letter of recommendation from the associate dean of his law school, and a Certificate of Release of IRS tax lien. The Board found this presentation insufficient to establish a defense or to mitigate any of the proven misconduct and insufficient to establish rehabilitation. The Board concluded that M.A.R.’s violation of the child support order was individually disqualifying and that the remaining instances of misconduct were collectively disqualifying. Accordingly, it recommended that M.A.R. not be admitted to The Florida Bar. M.A.R. now seeks review of this recommendation.
Essentially, M.A.R. takes issue with the Board’s conclusion that his misconduct is disqualifying for admission to the bar. As to his violation of the child support order, he argues that there were mitigating circumstances which sufficiently explain and excuse his actions. As to the remaining instances of misconduct, he argues that considering the surrounding circumstances, they are not serious enough to reflect negatively on his character and fitness to practice law.
We disagree and find that, when considered in the aggregate, the proven instances of misconduct are sufficient to justify nonadmission. This Court has set forth the test to be applied in determining character and fitness for admission to The Florida Bar: “First, are the facts in this case such that a reasonable [person] should have substantial doubts about the petitioner’s honesty, fairness, and respect for the rights of others and for the laws of the state and nation? Second, is the conduct involved in this case rationally connected to the petitioner’s fitness to practice law?” Florida Bd. of Bar Exam’rs, 364 So.2d 454, 459 (Fla.1978).
In Florida Board of Bar Examiners re E.R.M., 630 So.2d 1046 (Fla.1994), among other misconduct, the applicant failed to pay a large portion of his court-ordered child support, resulting in judgments against him which remained outstanding until vacated as part of his divorce judgment. Additionally, some of the support payments he made by check were returned for insufficient funds. We approved the Board’s finding that through this conduct, the applicant “[ejxhibited a disregard for his moral and legal obligations to his children, lack of financial responsibility, and a lack of respect for the court and legal system.” Id. at 1047.
Similarly here, M.A.R.’s failure to pay child support shows a lack of respect for the rights of his children and his ex-wife and a lack of respect for the law and for the court order itself. The marital settlement agreement which was reflected in the child support order required M.A.R. to pay only $150 a week for three children, and while he may have paid some child sup *92 port, there were several years during which he paid very little. For the years 1989 through 1992, according to his own account, he paid a total of only $2551.
Further, regardless of any alleged agreement with his wife, which is far less than clear, and regardless of his alleged ability to pay the amounts required, he still clearly violated and disregarded a court order. This conduct was based upon a personal decision which forced others to accept the consequences. Such misconduct is rationally connected to M.A.R.’s fitness to practice law. It is exceedingly important that potential members of the Bar respect and obey orders of the court and follow proper channels to seek modification of those orders, rather than simply ignoring them. One may always find excuses to present when conduct is in violation of a court order, but the citizens of Florida are entitled to more than excuses when we certify the character and fitness of our lawyers.
Moreover, M.A.R.’s failure to timely file and pay federal income taxes and his conduct in writing worthless checks show dishonesty, financial irresponsibility, and a lack of respect for the law and for the rights of others. M.A.R. admits to writing over forty worthless checks in the past four and a half years. Significantly, this misconduct occurred after M.A.R. had already graduated from law school, and he admits that it has continued until as late as one week prior to his formal hearing. This Court has characterized the practice of routinely writing worthless checks as “fundamentally dishonest” even if the checks are eventually made good, and has stated that such behavior is “inconsistent with fitness to practice law.” Florida Bar re Lopez, 545 So.2d 835, 837 (Fla.1989).
M.A.R.’s conduct in continuing to write worthless checks and failing to timely file and pay income taxes is rationally connected to his fitness to practice law because it not only demonstrates a total disregard for the law, it also calls into serious question his ability to properly handle client funds. In Florida Bar re Roberts, 721 So.2d 283 (Fla.1998), we noted that economic irresponsibility, as shown through chronic worthless check writing, “creates a potential danger to the public should [the applicant] be placed in a position of handling trust funds.” Id. at 286.
Finally, M.A.R.’s conduct in having certain bar application documents notarized prior to completing the required information on the documents, his misrepresentation on his law school application, and his misrepresentation that he was an attorney also generates doubts as to his honesty and integrity. While M.A.R. attempts to minimize the significance of each of these instances with explanations and excuses for his conduct, when considered together and along with the other proven instances of misconduct, they simply tend to show a lack of candor. We must appreciate the rational distinction between valid and justified reasons for unacceptable conduct and excuses that are simply a facade, and we must be vigilant to make certain that our certification process not descend to the level of approving less than acceptable prior conduct by merely attaching a string of excuses and explanations.
Unquestionably, conduct showing dishonesty is rationally related to an applicant’s fitness to practice law. This Court has placed special emphasis on truthfulness and candor as a requirement for those seeking admission to The Florida Bar. See Florida Bd. of Bar Exam’rs re C.A.M., 639 So.2d 612, 613 (Fla.1994)(“A lack of candor on the part of an applicant is intolerable and disqualifying for membership in the Bar.”); Florida Bd. of Bar Exam’rs re M.R.I., 623 So.2d 1178, 1180 (Fla.l993)(stating that no moral character qualification is more important than truthfulness and candor); Florida Bd. of Bar Exam’rs re J.H.K., 581 So.2d 37, 39 (Fla.1991)(same).
Accordingly, we find that the proven specifications, when considered in the ag *93 gregate, are sufficient to justify nonadmission, and we approve the Board’s recommendation that M.A.R. not be admitted to The Florida Bar at this time.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.