PER CURIAM.
This case is before the Court on the Public Report and Recommendation of the Florida Board of Bar Examiners with respect to the application for admission to The Florida Bar of Mark Stephen Barnett. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we approve the Board’s Public Report and Recommendation and admit Barnett to The Florida Bar on a conditional basis. He is to remain on probation for a period of three years, during which time he will fully comply with the conditions recommended by the Board in its Public Report and Recommendation.
FACTUAL BACKGROUND
Barnett became a member of The Florida Bar in October 1988. In 1997, he filed an uncontested petition to resign in lieu of disciplinary proceedings, which the Court granted on August 21, 1997, effective, nunc pro tunc, April 29, 1997, the date of his emergency suspension.
On July 20, 2004, Barnett filed an Application for Admission to The Florida Bar *235 with the Florida Board of Bar Examiners. He successfully completed the February 2004 General Bar Examination and the August 2004 Multistate Professional Responsibility Examination.
The Board conducted an investigation of Barnett’s background, including the circumstances surrounding his disciplinary resignation from the Bar in 1997, which revealed information reflecting adversely upon Barnett’s character and fitness under the provisions of rules 2-12, 3-10, 3-11, and 3-12 of the Rules of the Supreme Court Relating to Admissions to the Bar. The Board served Barnett with five separate specifications detailing incidents in his past that reflected negatively on his character and fitness to practice law. Barnett filed answers to the specifications. A public formal hearing on the specifications was convened in July 2006.
Specification 1 alleged that Barnett was admitted to the Bar in October 1988 and filed a petition for disciplinary resignation with the Court in June 1997, which the Court granted on August 21, 1997. At the time Barnett filed his petition for disciplinary resignation, he was under emergency suspension and had several Bar disciplinary cases pending against him. One of the Bar’s complaints in those cases alleged that Barnett had misappropriated client funds and failed to hold client funds in a separate trust account, in. violation of Rules Regulating the Florida Bar 4-1.15(a) (requiring a lawyer to hold in trust, separate from the lawyer’s own property, funds and property of clients or third persons that are in a lawyer’s possession in connection with a representation); 4-8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and 5-l.l(a) (requiring a lawyer to hold in trust and to apply only to the client’s expressed purposes any money or other property entrusted to the attorney, including advances for costs and expenses).
Specification 1 also alleged that the referee, following a hearing on the Bar’s complaint, rejected Barnett’s explanation that the matter was a fee dispute between him and his client, found Barnett guilty of the rule violations charged, and recommended that the Court suspend Barnett for three years, concurrent with three years of probation during which time he should be required to submit to random drug testing and rehabilitation. The referee further recommended that the Court order Barnett to pay restitution of $13,007.60, to his client and to reimburse the Bar’s costs of $5,816.52. This pending case was dismissed after the Court granted Barnett’s petition for a disciplinary resignation.
Also pending against Barnett at the time of his resignation, and dismissed as a result of his resignation, was a ten-count complaint reflecting grievances filed against him with the Bar by ten different individuals. This complaint alleged violations of rules 3-4.8 (nine counts of failing to respond in writing to an investigative inquiry by Bar counsel); 4-1.3 (three counts of failing to diligently represent a client); 4-1.4 (five counts of failing to communicate with clients); 4-3.2 (two counts of failing to reasonably expedite litigation); 4-8.4(c) (three counts of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 4-8.4(g) (ten counts of failing to respond in writing to an inquiry from a disciplinary agency).
In addition, Specification 1 alleged that Barnett agreed to represent clients in two separate cases after his emergency suspension began, which led the Bar to file a petition for an order to show cause and for contempt against him with the Court. The petition was dismissed after Barnett’s resignation.
*236 Specification 2 alleged that Barnett, in November 1997, failed to stop at a law enforcement checkpoint because, at the time, he had been on a heroin binge for four days. When he finally stopped, Barnett was arrested and charged with driving under the influence, battery on a law enforcement officer, possession of cocaine, and resisting arrest with violence.
Although the charges were dropped, all but the battery on a law enforcement officer charge were refiled. The possession of cocaine charge was eventually nolle prossed. Barnett pled nolo contendere to resisting arrest with violence. The trial court withheld adjudication and placed Barnett on probation for eighteen months. The probation was terminated after twelve months. Barnett pled nolo contendere to driving under the influence and was adjudicated guilty. The trial court suspended his driver’s license for six months, ordered Barnett to pay $519.50 in fines, and ordered him to complete fifty hours of community service.[1]
Specification 3 alleged Barnett failed to timely file his federal income tax returns for 1993,1994,1995,1998,1999, 2000, 2001, 2002, and 2003.
Specification 4 alleged that Barnett was sued by Ralph Itzhaki in March 1997 for $3,000 for money Itzhaki had loaned Barnett and that Barnett had never repaid. In December 1997, a final judgment was entered in favor of Itzhaki for $3,000, plus interest of $600, court costs of $129, and the filing fee of $25, for a total judgment of $3,754. The judgment remained unsatisfied.
Specification 5 alleged that Barnett was in an automobile accident in January 1996 that led to a suit by Geico in September 1999. In May 2000, a default judgment was entered against Barnett and in favor of Geico for $3,547.37 in principal, $1,535.72 in prejudgment interest, and costs of $213.50, for a total judgment of $5,296.59.
In October 2006, the Board filed its Public Report and Recommendation with the Court. The Board found that the allegations in Specifications 1, 2, and 3 had been proven and that the conduct was individually disqualifying. The Board further found that the allegations in Specifications 4 and 5 had been proven and that the conduct was collectively disqualifying.
Barnett testified concerning his battle with addictive substances that spanned over twenty years of his life and caused or contributed to his misconduct. Barnett told the Board that he became a daily marijuana smoker when attending Columbia University as an undergraduate. By the time he dropped out of college in May 1980, he was a regular user of cocaine. A short time later, in 1981, he began using heroin. Despite his heroin use, he returned to Columbia as an undergraduate in January 1982 and received his Bachelor of Arts degree in May 1983. When he entered law school in January 1985, he was a regular user of heroin. He was still a user when he graduated in December 1987 and was employed by the Attorney General’s Office. Shortly after his employment began, he became physically dependent and needed daily doses of heroin. His active addiction continued throughout his employment there, which lasted until 1993, when he left the Attorney General’s Office to open his own law practice.
Barnett’s drug abuse continued for some time after his disciplinary resignation, un *237 til he began attending Alcoholics Anonymous (AA) meetings. His sobriety date is December 20, 1997. He spent eight days in a detoxification program in Massachusetts and lived in a halfway house for approximately two and one half months after this date. He obtained employment as a paralegal and has been employed and abstinent of drugs and alcohol since then.
Barnett testified concerning his rehabilitation activities since his resignation from the Bar. These included: (1) daily prayer and meditation; (2) attending at least four AA meetings per week; (3) attending one Florida Lawyers Assistance, Inc. (FLA) meeting per week; (4) attending one meeting at the halfway house; (5) attending a weekly breakfast meeting on Sunday morning; (6) fulfilling speaking engagements at various clubs or treatment centers; (7) serving as an AA sponsor for four individuals with daily contact; (8) serving as the sponsor for well over a hundred individuals over the years; (9) serving on the board of the San Marco AA Club and for four halfway houses; (10) serving as an officer for both AA clubs and FLA groups; (11) going to temple every Friday; (12) attending adult education in his faith; (13) taking an active role in the temple brotherhood; (14) staying involved with Gateway, a support group to help members stay clean and sober while enjoying the live music scene; (15) serving at over seventy concerts in the last five years with Gateway; (16) complying with all of the reporting requirements under the Bar rules for former attorneys working as law clerks; (17) reimbursing the Client Security Fund for approximately $20,000 the fund paid to his former clients; and (18) paying the costs to the Bar required by the Court’s order granting his petition for disciplinary resignation.
Several witnesses testified on Barnett’s behalf. Judy Rushlow, the Assistant Director of FLA testified concerning Barnett’s contracts with FLA and his exemplary record of compliance with the contract terms since he signed his first contract with FLA in January 1998. The Honorable Hugh Alfred Carithers, Circuit Judge in Jacksonville, Florida, also testified on Barnett’s behalf. Judge Carithers testified that he is sure that Barnett has not used alcohol or illegal drugs since he has known him. He said the two most important things to Barnett are his ability to have honest relationships with others and his sobriety. Judge Carithers also testified that he and Barnett never had a meeting during which they did not pray together. He described Barnett as a very spiritual, giving person, who is always doing things for others, and as a very public-minded person. He also described Barnett as one of the most honest and moral people he has ever met and he would trust Barnett with his own money or with any case he was qualified to handle. Judge Carithers unequivocally recommended that. Barnett be readmitted to the Bar.
In addition to the live testimony presented, Barnett introduced into evidence the affidavits of five attorneys, one judge, a rabbi, the applicant’s AA sponsor, an individual Barnett sponsored in AA, and a fellow member of Gateway, as well as the depositions of his employer and his younger brother.
The Board concluded that Barnett’s evidence established rehabilitation by clear and convincing evidence as required by rule 3-13. While the Board recognized that Barnett established a nine-year record of sobriety, it ■ nevertheless recommended conditional admission and a probationary period because of the additional stress Barnett is likely to face upon his return to the practice of law. The Board *238 recommends, and Barnett agrees, that Barnett’s probationary period and conditional admission should include several conditions, among which are continued abstinence from alcohol and controlled substances and compliance with his FLA contract.
ANALYSIS
In the bar admission process the burden is upon the applicant to demonstrate his or her good moral character. Fla. Bd. of Bar Exam’rs re H.H.S., 373 So.2d 890, 891-92 (Fla.1979). Disbarment alone is disqualifying for admission to the Bar unless an applicant can show clear and convincing evidence of rehabilitation. Fla. Bd. of Bar Exam’rs re Papy, 901 So.2d 870, 872 (Fla.2005). Disciplinary resignation is tantamount to disbarment. Fla. Bar v. Hale, 762 So.2d 515 (Fla.2000).
In determining whether the petitioner has shown sufficient rehabilitation, the nature and seriousness of the offense are to be weighed against the evidence of rehabilitation. Fla. Bd. of Bar Exam’rs re M.L.B., 766 So.2d 994, 996 (Fla.2000); Fla. Bd. of Bar Exam’rs re D.M.J., 586 So.2d 1049, 1050 (Fla.1991). The “more serious the misconduct, the greater the showing of rehabilitation that will be required.” Fla. Bd. of Bar Exam’rs re J.J.T., 761 So.2d 1094, 1096 (Fla.2000).
The Papy case is instructive. The respondent in Papy was an attorney who had been previously admitted to the Bar and had resigned pending disciplinary proceedings. He resigned after misappropriating funds from one or more of his clients, failing to timely file federal income tax returns for five years, failing to timely pay income taxes for six years, and having federal tax liens for unpaid taxes for four years filed against him. At the time of the formal hearing for readmission, the respondent still had not satisfied the tax liens for two of the years and failed to make the parties injured by his defalcations whole. The Board recommended that the respondent be denied admission. The Court approved that recommendation. “Papy simply has not made adequate progress in rectifying his financial irresponsibility for this Court to even consider his admission to the Bar at this time.” 901 So.2d at 872. “Further, Papy has not engaged in any effort whatsoever to make whole the others who suffered financial consequences as a result of his misconduct.” Id. Stealing from a client is among those acts at the very top of the hierarchy of offenses for which lawyers may be disciplined. Id.; see also Fla. Bar v. Korones, 752 So.2d 586, 589 (Fla.2000) (disbarring attorney for five years for misappropriating funds from his deceased uncle’s estate); Fla. Bd. of Bar Exam’rs re M.A.R., 755 So.2d 89, 91-92 (Fla.2000) (denying admission to attorney who failed to timely file and pay income taxes and wrote worthless checks).
Barnett testified that he has repaid the Client Compensation Fund over $20,000 to replace the money the Fund paid out to Barnett’s former clients. He also paid the Geico judgment. He has paid all taxes, interest, and penalties he owed to the IRS. He has not paid the Itzhaki judgment because he does not know where Itzhaki is located.
Rule 3 — 23.6(b) gives the Board the authority to recommend the conditional admission of an applicant “in exceptional cases involving drug, alcohol, or psychological problems on the terms and conditions specified by the Board.” There is no rule or provision which restricts conditional admissions to first-time applicants. There is no case holding that conditional admissions are inappropriate for attorneys who were previously Bar members, but who resigned while disciplinary proceedings were pend *239 ing against them. Further, conditional admission is appropriate because Barnett admits that he had a serious drug addiction for over twenty years and that he entered a recovery program after his resignation from the Bar.
We agree with the Board that Barnett’s rehabilitation evidence was sufficient to overcome his past misconduct. His actions in making restitution to those he injured and in satisfying his financial obligations demonstrate he has done what could be done to atone for his misconduct. That he has established a solid program of recovery for close to a decade, is continuing to actively participate in a recovery program, and is helping others in their recoveries are also important factors in our decision.
Further, we agree with the Board that Barnett’s admission should be conditional. As noted by the Board, although Barnett practiced law before, he has not practiced law since becoming clean and sober. The conditional admission and probationary conditions, to which Barnett agrees, will ensure that any problems that arise can be quickly identified and addressed so that the profession and the public are protected.
CONCLUSION
Accordingly, for the reasons expressed above, we approve the Board’s report and recommendation and admit Mark Stephen Barnett to The Florida Bar on a conditional basis for three years. Barnett shall be on probation for the first three years of his admission with the probationary conditions recommended by the Board.
It is so ordered.
ANSTEAD, PARIENTE, QUINCE, and CANTERO, JJ., concur.
LEWIS, C.J., dissents with an opinion, in which WELLS, J., concurs.
BELL, J., dissents with an opinion.

. Barnett testified at the final hearing in this matter that his license was suspended for eighteen months, not six.