PER CURIAM.
This is a petition for review of a recommendation by the Florida Board of Bar Examiners (Board) that J.H.K. not be admitted to The Florida Bar. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
The most significant charge against J.H.K. was that he had demonstrated a pattern or course of untruthfulness in the application proceedings for admission to the bar. On February 27, 1985, during petitioner’s first year of law school, petitioner filed a student registration application for the bar examination. Item 14 of the application requested a listing of the applicant’s credit sources. The question concluded with the statement, “If not applicable, please so state.” The petitioner responded, “N/A = Not Applicable.” Items 20 and 21 also contained the statement, “If not applicable, please so state,” and petitioner responded “N/A” in response to both items. Item 20 required disclosure of all criminal proceedings in which petitioner committed or was accused of committing a delinquent act or violation of the law while a juvenile. Item 21(a) required disclosure *38 of all instances in the petitioner’s life, including while he was a juvenile, where he had been arrested, detained or restrained, given a warning or taken into custody or accused, formally or informally, of committing a delinquent act. Petitioner also responded “N/A” to a number of other items on the application.
In converting his student application into an application for admission to the bar, petitioner amended his original application on May 27, 1987, by disclosing eight accusations of juvenile offenses. During an investigative hearing which followed, petitioner was asked why he did not disclose the eight juvenile accusations in his original application. He responded:
[Petitioner] At the time that I filled out the application my intent was not to cover up in anyway. My intent was to fully disclose. The reason on that day, on February 22, 1985, when the Bar application was notarized, it was not disclosed, the fact that I was trying to meet a student registration deadline with the Florida Bar. I think it was at a, I think the price was much less, the amount of money was much less than if it would have been, if I would have filed it initially as an applicant.
[Board Member Smoak] Did you then know or did you then intend to omit those things from that application with the thought that you would amend later? Does that make sense to you?
[Petitioner] Yes.
[Board Member Smoak] You knew you were leaving them off for the time being?
[Petitioner] Exactly. As a matter of fact, the first incident happened in 1976, when I was 12 years old. The last incident on, which I have disclosed to the Board, was I think a reckless driving incident when I was 17 years old. I wanted to provide the Bar with a detailed explanation and not simply reveal an arrest record without knowing specifically what had happened. And that entailed research at the police station for unsealing my juvenile records. I had forgotten about half the incidents that happened in my juvenile years.
[Board Member Smoak] Your responses are not applicable, are abbreviated, was not accurate?
[Petitioner] Correct.
[Board Member Smoak] Wouldn’t candor and prudence have at least required that you say to the effect, I had a number of juvenile charges; I do not have the details; I will submit an amendment?
[Petitioner] That was, that is what I should have, in retrospect that’s what I should have put down.
[Board Member Smoak] When you look at the responses you gave at that time, you would agree with me, that one, not only were they not accurate, but they were misleading.
[Petitioner] Yes.
Subsequently, at the formal hearing the petitioner explained that he intended “N/A” to mean “not applicable” for most of the items on his original application, but “not available at the time” for items 20 and 21. Petitioner claimed that he did not write out “not available at the time” because he was in a hurry. Significantly, however, under item 13(b), where petitioner was asked to list his Selective Service Number, he stated, “I will forward it shortly.”
The Board concluded that petitioner had knowingly omitted the eight juvenile accusations from his original application without a satisfactory explanation. As a finding of fact, the Board stated:
Based upon consideration of the record before it including the matters discussed above and having had the opportunity to evaluate the applicant’s demeanor during his formal hearing testimony, the Board finds that his testimony regarding his intent in the use of the designation “N/A” was totally unreasonable and unworthy of belief.
The Board also referred to the petitioner’s previously quoted testimony at the investigative hearing in observing that petitioner’s explanation that “N/A” under items 20 and 21 actually meant “not available at the time” was offered for the first time at the formal hearing.
*39 Petitioner was further charged with misrepresenting the reason for his termination of prior employment both to his supervisor and on his application form for employment with the United States Department of Labor. In the application, where it asked the reason for leaving prior employment, petitioner responded that he had left his previous employment with a law firm because he “wanted to get additional experience in litigation.” He later told his supervisor that he left the law firm because he had been asked to do something unethical. However, petitioner’s supervisor at the law firm testified that petitioner had been fired because of unsatisfactory work. He said that litigation experience was available to petitioner during his employment and that he had no knowledge of petitioner’s having been asked to do anything unethical. The Board concluded that petitioner had knowingly made the misrepresentations to the Department of Labor. In addition, petitioner was found to have engaged in improper conduct in stopping a $200 check during a dispute over the filming of a music video while at the same time taking possession of the filmed footage for which the check was intended to be payment.
In its Conclusions of Law, the Board stated:
Based upon the findings set forth above, the Board concludes that the proven Specifications — when considered in the aggregate — are disqualifying for admission to The Florida Bar. As noted in the findings above, the Board observed additional untruthfulness and a continuing lack of candor during the applicant’s formal hearing testimony. The applicant’s misconduct as established by the proven Specifications and as observed by the Board during the formal hearing convinces the Board of the applicant’s present inability to be truthful and candid in his dealings with others.
Based upon the record before it, the Board concludes that the applicant has failed to establish his good moral character. The applicant’s continuing misconduct further convinces the Board that he presently possesses an inadequate knowledge .of the standards and ideals of the legal profession.
The Board’s recommendation is amply supported by the evidence. It is not the fact that petitioner was accused of eight juvenile offenses which disqualifies him for admission to the bar. Not only did he leave them off his application, but also he subsequently gave conflicting accounts concerning the manner in which he responded to items 20 and 21. The Board was not required to believe his incredible explanation that the notation “N/A” meant “not applicable” in some circumstances but “not available at the time” in others. The evidence with respect to why he left his previous employer was in direct conflict, and the Board was entitled to reject petitioner’s version of events. As this Court stated in Application of VMF for Admission to The Florida Bar, 491 So.2d 1104, 1107 (Fla.1986):
We also wish to stress the fact that we expect no less than absolute candor from a Bar applicant in his dealings with the Board.
We further agree that the evidence of good character and rehabilitation presented by petitioner did not sufficiently offset his lack of veracity. As noted in Application of Allan S., 282 Md. 683, 689, 387 A.2d 271, 275 (1978):
While there is no litmus test by which to determine whether an applicant for admission to the Bar possesses good moral character, we have said that no moral character qualification for Bar membership is more important than truthfulness and candor.
We accept the recommendation of the Board. Because the petitioner has failed to meet the standards of character and fitness required under the provisions of article III, section 2 of the Rules of the Supreme Court Relating to Admissions to the Bar, we deny the petition for review.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, barkett, grimes, KOGAN and HARDING, JJ., concur.