PER CURIAM.
M.R.I. petitions this Court for review of the recommendation of the Florida Board of Bar Examiners that her application for admission to The Florida Bar be denied. We have jurisdiction under article V, section 15 of the Florida Constitution.
M.R.I. was born November 10, 1948, in Havana, Cuba. Her family moved to New York in October of 1960, when M.R.I. was almost twelve years old. She completed her secondary education in New York and attended a secretarial school from February to September 1966. She later received her B.A. from a college in Florida, and in May 1983, she received her J.D.
After two investigative hearings and a formal hearing, the Board concluded that the alleged specifications were proven and made findings as follows:
Specification 1: On her 1977 application to the college from which she received her undergraduate degree, M.R.I. falsely claimed prior attendance at the University of Havana and was awarded forty-five hours of academic credit. She also stated that her year of birth was 1944, rather than the true year of 1948, to give her claimed attendance at the University of Havana more plausibility. M.R.I. repeated this fraud on her initial application to law school, on which she listed the University of Havana under “prior schools attended” and used the 1944 birth date. Further, M.R.I. did not notify the schools of her fraudulent activity until after the Board recommended she do so. The Board found M.R.I. intentionally and knowingly participated in perpetrating a fraud.
M.R.I. admitted she never attended the University of Havana, but said she was told by college officials that awarding credits this way was simply an administratively easier way to give her credit for the secretarial school diploma (since she could not obtain an official transcript from that school) and for her life experience. The Board did not find this to be mitigating, even if true, since M.R.I. was twenty-nine years old when she applied to college and admitted she personally felt what the officials suggested was improper but went along with it anyway.
The Board also rejected M.R.I.’s argument that she had not gained any unfair advantage or windfall by her deceitful conduct because of her attendance at the secretarial school. M.R.I. did not receive an Associate Degree from this school, as she claimed, but rather a Senior Executive Secretarial Diploma. Further, the basic secretarial classes she took at *1179 that school were very different from the prelegal, highly academic University of Havana classes listed on her college transcript.
The Board acknowledged that in 1989 M.R.I. compensated for the fraudulent credits by attending accelerated studies with testing, but found that this was not sufficiently mitigating because this was the minimum that would be expected of her to correct the past fraud and because it was only proper that she make up the credits so that her degrees would remain valid.
Specification 2: M.R.I. held herself out to the public as an attorney licensed to practice law in Florida. In 1983, M.R.I. filled out an application for occupancy of an apartment and listed her position with her employer as “lawyer.” In 1984, she filled out a MasterCard application and again listed her position as “lawyer.” An unlicensed practice of law (UPL) investigation was conducted by the Bar and dropped when no probable cause was found. M.R.I.’s attorney in that case later told a Bar investigator that he warned M.R.I. to be more careful as to how she held herself out to the public.
A few years later, M.R.I. was the subject of another UPL investigation by the Bar. She was approached by an undercover investigator, Antonio Sanchez, who posed as a potential client — a drug dealer whose associates were arrested. Sanchez testified at the formal hearing that he met with M.R.I. and she repeatedly assured him that she was a lawyer, although she ultimately advised him that she would like to call in someone else who specialized in criminal law since she had been mainly handling real estate matters.
Both M.R.I. and the lawyer to whom M.R.I. referred Sanchez testified at the formal hearing and denied telling Sanchez that M.R.I. was an attorney. They said Sanchez was told M.R.I. was not licensed by the Bar. The Board found the testimony of Sanchez to be more credible than that of M.R.I. and the lawyer, as Sanchez had no self interest in the proceedings.
Specification 3: M.R.I. gave false, misleading, or less than candid testimony when she denied she had held herself out to the public as a licensed attorney.
Specification 4: M.R.I. provided false, misleading, incomplete, or less than candid responses on her 1984 Bar application. She failed to reveal a previous marriage, to list other names she had used, and to inform the Board that her name had been legally changed. M.R.I. testified these omissions were oversights, but the Board found this testimony unworthy of belief.
Specification 5: M.R.I. gave false testimony to the Board at her investigative hearings by naming a particular person at the college who had advised her to falsify her educational qualifications and year of birth. This person’s deposition was taken by the Board, and he flatly denied that he advised M.R.I. in this manner. M.R.I. admitted at the formal hearing that he was not the person who advised her to lie, and that all he did was set up an appointment for her. She then identified another person as the one who advised her. This second person had died several years before. M.R.I. explained her previous statements as an unintentional mistake attributable to her nervousness.
The Board rejected this explanation, noting that M.R.I. made the same statement as to the first person’s role in a written affidavit prepared in October 1987, after the first investigative hearing. Any nervousness present at the hearings was not present when she prepared her affidavit. The Board also noted these statements were made on more than one occasion in different forums, supporting a finding that they were made intentionally. M.R.I. only admitted that she had wrongly identified the person who had advised her to lie after receipt of the specifications alleging she was being untruthful about that claim.
The Board found the specifications in the aggregate to be disqualifying. The Board also noted that at the formal hearing M.R.I. was not candid regarding the above issues as well as other issues, including when she found the unofficial secretarial school transcript, why she used the 1944 birth date, and when she first filed a Bar admission application.
After reviewing the record, we conclude that the Board’s findings are supported by *1180 competent and substantial evidence. The only real factual dispute involves the allegations of specification 2, and this issue turns on a question of the credibility of the witnesses. The Board found the testimony of Sanchez to be more credible than the other witnesses, and this finding is supported by the record. M.R.I.’s argument that she did not actually engage in the unlicensed practice of law is irrelevant. The specification alleged that she held herself out to the public as a practicing attorney, not that she engaged in the unlicensed practice of law, and the specification as written was proven.
Outside of this specification, M.R.I. basically argues that her omissions and misstatements were accidental and tangential, and that her deceit at her undergraduate college should be excused, or at least mitigated, because she deserved the credits anyway and it was not her idea to lie. In considering this argument, we must note that M.R.I.’s lies do not seem to be isolated instances. In her testimony at the various hearings M.R.I. was extremely defensive and made numerous contradictory statements. Viewed individually M.R.I.’s “misstatements” could be excused, but when considered in the aggregate it becomes apparent that the omissions and contradictions were not innocent mistakes but rather reflect a basic lack of honesty.
This Court has made it abundantly clear that candor is essential to be admitted to the Bar. As we stated previously, “‘[w]hile there is no litmus test by which to determine whether an applicant for admission to the Bar possesses good moral character, we have said that no moral character qualification for Bar membership is more important than truthfulness and candor.’” Florida Board of Bar Examiners re J.H.K., 581 So.2d 37, 39 (Fla.1991) (quoting Application of Allan S., 282 Md. 683, 387 A.2d 271, 275 (1978)).
Accordingly, we agree with the Board that the proven specifications in the aggregate are sufficient to justify nonadmission to the Bar. M.R.I. offered affidavits, depositions, and letters of several people who attested to her honesty and integrity and recommended her admission to the Bar, and she testified that she has aided attorneys in pro bono work and volunteered at a homeless shelter. The Board found this evidence to be insufficient rehabilitation to overcome M.R.I.’s dishonest conduct, and we agree. We also note that while ten years have passed since M.R.I. successfully completed the Bar exam, the delay in the admissions process was not caused by the Board but by M.R.I.’s own actions.
M.R.I.’s past misconduct and continuing lack of candor establish that she fails to meet the standards of conduct and fitness required of Bar applicants. We therefore approve the Board’s findings and recommendation and deny M.R.I.’s petition for admission to The Florida Bar.
It is so ordered.
BARKETT, C.J., and OVERTON, McDonald, shaw, grimes, kogan and HARDING, JJ., concur.