LABARGA, J.,
concurring.
I reluctantly concur with the majority decision rendering an otherwise qualified class of applicants ineligible to practice law in Florida simply on the basis of their immigration status, but I do so only because the present state of federal and Florida law compels me to reach such an inequitable conclusion. Specifically, the Florida Legislature has failed to enact any law providing that unauthorized immigrants are eligible for certain public benefits, in this case a license to practice law, as authorized by 8 U.S.C. § 1621(d), and as the California Legislature recently did to clear the only impediment to Sergio Garcia’s admission to the State Bar of California. See In re Garcia, 58 Cal.4th 440, 165 Cal.Rptr.3d 855, 315 P.3d 117, 127 (2014) (citing Cal. Bus. & Prof.Code § 6064 (West 2014)). Given this authority to determine the eligibility of a class of applicants to The Florida Bar, the Florida Legislature is in the unique position to act *438 on this integral policy question and remedy the inequities that the unfortunate decision of this Court will bring to bear.[9]
The injustice of this decision is more apparent when applied to Applicant, who was the impetus for the Board’s petition for an advisory opinion only after the Board adopted a policy in January 2008 requiring applicants to provide immigration documents. As a nine-year-old child, Applicant legally entered the United States from Mexico with his family, who had passports and valid tourist visas. Through no fault of his own, however, his family overstayed their visas and opted not to return to Mexico. Although Applicant initially only spoke Spanish, he successfully integrated into American society by learning English, becoming an Eagle Scout, graduating from a Tampa high school as valedictorian,[10] graduating from New College of Florida,[11] and graduating from The Florida State University College of Law with several book awards.[12] Throughout the Bar admissions process, Applicant disclosed his immigration status, and the Board indicated in a notice of supplemental authority dated March 15, 2013, that “nothing presently contained in [Applicant’s] investigative file will, in and of itself, be considered disqualifying.” Further, Applicant passed The Florida Bar Examination. Moreover, numerous law professors, the general counsel of his undergraduate institution, an attorney from Gulfeoast Legal Services, and past presidents of the American Bar Association strenuously supported Applicant’s eligibility for admission to The Florida Bar. Thus, it has become increasingly apparent throughout these proceedings that Applicant is an otherwise legally qualified applicant for admission to The Florida Bar and that he is the type of exemplary individual The Florida Bar should strive to add to its membership. However, as discussed below, Applicant is an unauthorized immigrant ineligible to receive public benefits under federal law because, as he explained in his law school application essay, he did not resist his parents when they chose to escape their impoverished conditions in Mexico.
Although Florida law ordinarily governs Bar admissions, under the supremacy clause of the United States Constitution, our state laws are subordinate to federal statutes adopted pursuant to Congress’s authority under the United States Constitution. The federal statute at issue here, 8 U.S.C. § 1621, was adopted pursuant to Congress’s “constitutional power to ‘establish an [sic] uniform Rule of Naturalization’ ” due, in part, to “its inherent power as sovereign to control and conduct relations with foreign nations.” See Arizona v. U.S., — U.S. -, 132 S.Ct. 2492, 2498, 183 L.Ed.2d 351 (2012). Further, *439 “past decisions of the United States Supreme Court clearly establish that the federal government generally has ‘plenary authority’ over matters relating to immigration ... and that provisions of federal law relating to immigration prevail over any conflicting state law.” In re Garcia, 165 Cal.Rptr.3d 855, 815 P.3d at 125 (citing Arizona, 132 S.Ct. [at 2498-2502]; Takahashi v. Fish Comm’n, 334 U.S. 410, 419, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); Hines v. Davidowitz, 312 U.S. 52, 62-74, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). “Accordingly, even with respect to matters that ordinarily and historically are an appropriate subject of state regulation — such as a state’s granting or denial of a license to practice law in the state — when the federal government has enacted a law restricting the right of a non-United States citizen to obtain such a professional license, under the supremacy clause the applicable federal statute will necessarily take precedence and prevail over any conflicting state law.” Id. 165 Cal.Rptr.3d 855, 315 P.3d at 125.
The plain language of 8 U.S.C. § 1621 indicates Congress’s intent to preclude unauthorized immigrants from receiving professional licenses provided by appropriated governmental funds. The issuance of a license to practice law to an unlawfully present alien would require an order of this Court. See Fla. Bar Admiss. R. 5-11. This Court is funded through appropriations. See art. V, § 14(a), Fla. Const. (“Funding for the state courts system ... shall be provided from state revenues appropriated by general law.”). Thus, a license to practice law in Florida is issued by appropriated funds and subject to the provisions of 8 U.S.C. § 1621. As noted in the majority, 8 U.S.C. § 1621(d) provides that the Florida Legislature may stipulate that an unauthorized immigrant is eligible for any public benefit “through the enactment of a State law ... which affirmatively provides for such eligibility.” Despite this grant of uncharacteristic authority, the Florida Legislature has chosen not to act on this vital policy question.
When the Supreme Court of California was presented with a similar set of circumstances, the California Legislature enacted a state law affirmatively providing for such eligibility. Rather than allowing Sergio Garcia and other similarly situated applicants to be denied admission to the California State Bar solely on account of their immigration status, the California Legislature enacted, and the Governor of California signed, section 6064(b) of the California Business and Professional Code into law. See In re Garcia, 165 Cal.Rptr.3d 855, 315 P.3d at 125. Section 6064(b) of the Code provides that an unauthorized immigrant who has fulfilled all the requirements for admission to practice law may be admitted as an attorney at law in all the courts of California.[13] However, after concluding that California’s conflicting state law was subordinate to 8 U.S.C. § 1621, the Supreme Court of California considered whether the “recent legislation passed by the California Legislature and signed by the Governor enacting section 6064(b) satisfies the federal requirements set forth in section 1621(d) and thus removes any obstacle this federal statute would otherwise pose to [the Supreme Court of California’s] admission of Garcia to the State Bar.” Id. *440 165 Cal.Rptr.3d 855, 315 P.3d at 127. The Supreme Court of California held that it did, reasoning that the legislative enactment satisfied the requirements of 8 U.S.C. § 1621 because it was enacted after August 22, 1996, and the statute expressly applies to unauthorized immigrants. Id. 165 Cal.Rptr.3d 855, 315 P.3d at 129.
If the Florida Legislature were to take steps similar to those taken in California, and affirmatively provide that such unauthorized immigrants are eligible for professional licenses, or, more narrowly, a license to practice law, Applicant and other similarly situated qualified individuals would be eligible for admission to The Florida Bar pursuant to our current rules. As currently stated in the Florida Bar Admission Rules, the rules governing admission are reviewed, approved, and promulgated by this Court, and the admission of attorneys to the practice of the profession of law is a judicial function. See Fla. Bar Admiss. R. 1-11, 1-12. To be recommended for admission to The Florida Bar by the Florida Board of Bar Examiners, applicants must meet the requirements of all the applicable rules with regard to character and fitness, education, and technical competence. See Fla. Bar Admiss. R. 1-16. Notably, our rules do not require the attainment of a certain level of immigration status in this country or that the applicant be authorized to work for compensation to be recommended for admission to The Florida Bar. Throughout these proceedings, however, it has been suggested that unauthorized immigrants are ineligible to be admitted to The Florida Bar because this class of applicants is unlawfully present or potentially subject to federal employment restrictions.
Regarding unlawful presence, it has been argued that Florida Bar Admission Rule 3-10.1(c)(4) requires applicants to demonstrate that they will “avoid acts that are illegal, dishonest, fraudulent, or deceitful,” and that Applicant and other future similarly situated applicants have been unlawfully present in the United States for a period of time and will continue this unlawful presence. Further, Florida Bar Admission Rule 3-10.1(c)(5) requires applicants to demonstrate that they will “comply with the requirements of applicable state, local, and federal laws, rules, and regulations; any applicable order of a court or tribunal; and the Rules of Professional Conduct,” and Florida Bar Admission Rule 3-ll(a) provides that conduct disqualifying an applicant from admission includes “unlawful conduct.” Thus, it has been argued, Applicant and others similarly situated cannot be eligible for admission to The Florida Bar because they cannot comply with immigration laws. Cf. Godoy v. The Office of Bar Admissions, No. 1:05— CV-067&-RWS, 2006 WL 2085318, *5 (N.D.Ga. July 25, 2006) (“An applicant’s willingness to maintain an unlawful residence in the United States, like his ongoing participation in other illegal activities, has an undeniable bearing on that applicant’s character and fitness to practice law.”). However, our rules and case law do not support this myopic viewpoint, and application of our rules to Applicant demonstrates as much.
Florida Bar Admission Rule 2-12 provides that “[a]ll applicants seeking admission to The Florida Bar must produce satisfactory evidence of good moral character, an adequate knowledge of the standards and ideals of the profession, and proof that the applicant is otherwise fit to take the oath and to perform the obligations and responsibilities of an attorney. ...” “The sole purpose of [requiring proficiency in the law and good moral character] is to protect the public.” Fla. Bd. of Bar Exam’rs re G.W.L., 364 So.2d 454, 458 (Fla.1978). “Finding a lack of good moral character is not restricted to *441 acts reflecting moral turpitude, but, rather, includes ‘acts and conduct which would cause a reasonable man to have substantial doubts about an individual’s honesty, fairness and respect for the rights of others and for the laws of the state and nation.’ ” Fla. Bar re John, 559 So.2d 1089, 1090 (Fla.1990) (quoting G.W.L., 364 So.2d at 458 (emphasis added)). Thus, the effect an applicant’s unlawful presence has on the applicant’s record of moral character should be evaluated with two questions in mind: does the public need to be protected from the conduct at issue and does the applicant’s unlawful presence reflect moral turpitude or cause a reasonable person to have substantial doubts about the applicant’s honesty, fairness, and respect for the rights of others and the law.
Indeed, the language of the rules suggests that this is the ultimate purpose of a background investigation. For instance, Florida Bar Admission Rule 3-10, which is followed by Florida Bar Admission Rule 3-10.1 discussed above, provides that applicants must have a record of conduct that “justifies the trust of clients, adversaries, courts, and others with respect to the professional duties owed to him or her.” (Emphasis added). Florida Bar Admission Rule 3-10.1 also refers to the following essential attributes of an attorney: (1) knowledge of the principles of law; (2) ability to reason logically; (3) ability to comply with deadlines; (4) ability to communicate candidly and civilly with clients, attorneys, courts, and others; and (5) ability to conduct financial dealings in an honest manner. Finally, Florida Bar Admission Rule 3-11, titled “Disqualifying Conduct,” refers to “lack of honesty, trustworthiness, diligence, or reliability ...” and “academic misconduct,” fraud, deceit, misrepresentation, irresponsibility, neglect of professional obligations, mental or emotional instability, and evidence of drug or alcohol dependency, among multiple examples of disqualifying conduct. Accordingly, it is apparent that our rules are concerned with an applicant’s record of moral behavior, trustworthiness, reliability, and mental health when evaluating whether an applicant has produced satisfactory evidence of good moral character. See Fla. Bd. of Bar Exam’rs re M.R.I., 623 So.2d 1178, 1180 (Fla.1993) (quoting Fla. Bd. of Bar Exwm’rs re J.H.K., 581 So.2d 37, 39 (Fla.1991) (“While there is no litmus test by which to determine whether an applicant for admission to the Bar possesses good moral character, we have said that no moral character qualification for Bar membership is more important than truthfulness and candor.”)).
A fair reading of these rules in this context does not lead to the conclusion that unauthorized immigrants as a class are invariably ineligible for admission to The Florida Bar or to take the required oath of office based solely on their unlawful presence in this country.[14] First, unlawful presence is not a criminal offense and does not involve moral turpitude. The Supreme Court of California, in considering this identical concern, observed the following:
*442 Although an undocumented immigrant’s presence in this country is unlawful and can result in a variety of civil sanctions under federal immigration law (such as removal from the country or denial of a desired adjustment in immigration status) (8 U.S.C. §§ 1227(a)(1)(B), 1255©), an undocumented immigrant’s unauthorized presence does not constitute a criminal offense under federal law and thus is not subject to criminal sanctions. Moreover, federal law grants federal immigration officials broad discretion in determining under what circumstances to seek to impose civil sanctions upon an undocumented immigrant and in determining what sanctions to pursue. (See, e.g., Arizona v. United States, [132 S.Ct. at 2498-99].) Under current federal immigration policy it is extremely unlikely that immigration officials would pursue sanctions against an undocumented immigrant who has been living in this country for a substantial period of time, who has been educated here, and whose only unlawful conduct is unlawful presence in this country.
In re Garcia, 165 Cal.Rptr.3d 855, 315 P.3d at 130 (emphasis in original). Moreover, unlawful presence does not prevent an individual from performing the obligations and responsibilities of an attorney; does not in and of itself cause a reasonable person to have substantial doubts about an individual’s honesty, fairness, and respect for the rights of others and for .the laws; does not affect an individual’s trustworthiness; and does not affect an individual’s reliability. Thus, unlawful presence in this country is not in and of itself a disqualifying factor for admission to The Florida Bar. Accord In re Garcia, 165 Cal.Rptr.3d 855, 315 P.3d at 130-31 (“We conclude the fact that an undocumented immigrant is present in the United States without lawful authorization does not itself involve moral turpitude or demonstrate moral unfitness so as to justify exclusion from the State Bar, or prevent the individual from taking an oath promising faithfully to discharge the duty to support the Constitution and laws of the United States and California.”).
Indeed, a contrary result would prove unjust as applied to Applicant. For instance, as noted earlier, Applicant’s application revealed that, though unlawfully present, he arrived in this country at the age of nine, assimilated to this country’s culture, and excelled in academics and in community endeavors. Further, many individuals who have come to meet Applicant and know of his unlawful status have provided glowing recommendations as to his character and fitness to practice law in Florida. What is more, the Florida Board of Bar Examiners itself has reached the conclusion that he is otherwise fit to practice law. Accordingly, a determination that Applicant is not of good moral character to join this profession — despite overwhelming proof of his impeccable character, knowledge of the law, and ability to reason logically — because his family chose to overstay their visas and he chose to remain with his family as an adult after he assimilated to this country’s culture, would be an absurd result.
It has also been suggested that unauthorized immigrants who are restricted from working for compensation under federal law are ineligible for admission to The Florida Bar.[15] This argument is equally unpersuasive. Congress has enacted laws that set the terms of employment for aliens and impose civil and criminal penalties on employers who attempt to recruit or hire an unauthorized alien. See 8 *443 U.S.C. §§ 1824-1324a (2012). Thus, unauthorized immigrants who have not received authorization to work cannot work in the United States for compensation. As noted by the Supreme Court of California, however, an unauthorized immigrant’s inability to represent clients in some matters or for compensation “does not necessarily preclude all possible uses of a law license.” In re Garda, 165 Cal.Rptr.3d 855, 315 P.3d at 132.[16] Further, an unlawfully present attorney would still have to abide by the Rules of Professional Conduct, and there is no reason to speculate that an otherwise qualified applicant (someone who has provided satisfactory evidence of good moral character) would violate federal laws pertaining to employment authorization for unauthorized immigrants. See, e.g., In the Matter of Ravindra Singh Kanwal, D2009-053 (OCIJ July 8, 2009) (disciplinary action against licensed attorney who filed petitions for immigration benefits, and appeared in immigration courts on behalf of clients, even though he lacked authorization to work in the United States); People v. Kanwal, No. 09PDJ071, 2009 WL 2579847 (Colo.O.P.D.J. July 21, 2009) (suspending same attorney in Colorado); In the Matter of Noel Peter Mpaka Canute, D2010-124 (OCIJ March 16, 2011) (disciplining licensed attorney for filing petitions for immigration benefits on behalf of clients in violation of federal law); In re Mpaka, 92 A.D.3d 1203, 939 N.Y.S.2d 157 (2012). To the contrary, as the Supreme Court of California concluded, it should be assumed “that a licensed undocumented immigrant will make all necessary inquiries and take appropriate steps to comply with applicable legal restrictions and will advise potential clients of any possible adverse or limiting effect the attorney’s immigration status may pose.” In re Garcia, 165 Cal.Rptr.3d 855, 315 P.3d at 133.
In addition, as argued by the Department of Justice in its amicus brief, whether a license to practice law may be issued is not dependent on whether the applicant may be legally employed.[17] Notably, 8 U.S.C. § 1621(d) confers upon state legislatures the authority to provide that unauthorized immigrants are eligible to receive a license to practice law, but the statute does not condition the grant of such licenses on proof of work authorization. Perhaps this is so because federal law restrictions on employment change periodically, and many undocumented immigrants are now eligible to obtain work authorization. See In re Garda, 165 Cal.Rptr.3d 855, 315 P.3d at 132. Moreover, enforcement of the federal provisions governing employment of unauthorized immigrants is the responsibility of the federal government, not state government. Accordingly, an unauthorized immigrant’s potential inability to obtain work authorization under federal law is not an obstacle to admission to The Florida Bar pursuant to our rules.
Based on the foregoing, it is evident that the only barrier to admission to The Florida Bar for Applicant and others similarly situated is 8 U.S.C. §§ 1621(a) and (c). Indeed, in many respects, Applicant’s life in the United States parallels my own. He and I were brought to this great nation as young children by our hardworking immi *444 grant parents. We both learned to read, write, and speak the English language within a short period of time. We excelled scholastically and graduated from college and law school — Applicant from Florida State University and I from the University of Florida. Both of us were driven by the opportunities this great nation offered to realize the American dream. Sadly, however, here the similarities end and the perceptions of our accomplishments begin. When I arrived in the United States from Cuba in 1963, soon after the Cuban Missile Crisis — the height of the Cold War — my parents and I were perceived as defectors from a tyrannical communist regime. Thus, we were received with open arms, our arrival celebrated, and my path to citizenship and the legal profession unimpeded by public policy decisions. Applicant, however, who is perceived to be a defector from poverty, is viewed negatively because his family sought an opportunity for economic prosperity. It is this distinction of perception, a distinction that I cannot justify regarding admission to The Florida Bar, that is at the root of Applicant’s situation. Applicant is so near to realizing his goals yet so agonizingly far because, regrettably, unlike the California Legislature, the Florida Legislature has not exercised its considerable authority on this important question. Thus, only reluctantly do I concur with the majority decision.
PARIENTE, J., concurs.

. Typically, this authority is reserved exclusively for this Court pursuant to the provisions of the Florida Constitution, subordinate in this instance to the supreme law of the land. See art. V, § 15, Fla. Const, (providing that this Court is vested with “exclusive jurisdiction to regulate the admission of persons to the practice of law

. While in high school, he received: (1) an AP Scholar with Distinction Award; (2) the President's Education Award for Outstanding Academic Excellence; (3) an award for Achievement in Academics; (4) a Magna Cum Laude Award in the National Latin Examination; and (5) the 2002 FfACER Scholarship. He was also a member of the National Honor Society.

. New College of Florida is considered the public “honors college” of Florida.

. He was able to attend law school on privately funded scholarships. Further, he received book awards, which are awards given to recognize outstanding academic achievement, in Immigration Law, Contracts II, and Comparative Constitutional Law.

. The full text of section 6064(b) provides: "Upon certification by the examining committee that an applicant who is not lawfully present in the United States has fulfilled the requirements for admission to practice law, the Supreme Court may admit that applicant as an attorney at law in all the courts of this state and may direct an order to be entered upon its records to that effect. A certificate of admission thereupon shall be given to the applicant by the clerk of the court.” Cal. Bus. & Prof.Code § 6064 (West 2014).

. Currently our rules prohibit the following classes of individuals from applying for admission: (1) individuals who have been disbarred or have resigned pending disciplinary proceedings; (2) individuals who have been suspended for disciplinary reasons in a foreign jurisdiction and the period of suspension has not expired; (3) individuals who have been convicted of a felony and have not had their civil rights restored; (4) individuals who are serving felony probation; and (5) individuals who were previously denied admission by a negotiated consent judgment. See Fla. Bar Admiss. R. 2-13.1, 2-13.2, 2-13.3, 2-13.4, and 2-13.5. This exhaustive list does not include individuals who are unlawfully present in this country.

. Applicant has received some form of work authorization. Thus, this portion of the discussion is not applicable to his circumstances at the present time.

. For instance, pro bono services could be rendered.

. As noted in the majority op. at 433 n. 3, this Court issued an order requesting that the Department of Justice file an amicus brief addressing several issues, including many related to an unauthorized immigrant’s authorization to work and the effect the authorization to work or lack thereof has on an applicant’s eligibility for admission to The Florida Bar. The Department of Justice urged this Court not to base its decision on an unauthorized immigrant's ability to work for compensation under federal law.